Turn now to the two cases that are in tandem, County of Ontario, and Council have divided the time to suit their purposes, so we'll follow their lead. Just for the record, these two cases are 20-3865-BK and 20-3868-BK. Mr. DeFranzio will lead off. May it please the Court. Good morning, Your Honors. My name is Jason DeFranzio, appearing on behalf of the appellant, County of Ontario, in these two appeals. Initially, Your Honors, the District Court erred in refusing to extend the case of BFP v. Resolution Trust to lawfully conducted tax foreclosures conducted in accordance with New York law in these matters. The District Court below improperly focused only on the presence or absence of competitive bidding in the foreclosure process. The BFP Court went at great lengths to discuss that all of the factors need to be analyzed, that being notice, ample opportunity to cure, and also— BFP involved a mortgage lien. It didn't involve a tax lien like relitigated here. That's number one. And number two, Justice Scalia could not have been clearer that he says our opinion today only covers mortgage foreclosures and real estate. The considerations bearing upon other foreclosures and force of sales to satisfy tax liens may be different. So you've lost me. I'm not with you on that. Your Honor, two points just to address your question, just to address your points. And that is, number one, that that was a footnote that Justice Scalia did drop, stating that the opinion was limited to mortgage—the application to mortgage foreclosures. However, the Supreme Court— Was he wrong? No, no, because the Supreme Court is not in the business of rendering advisory opinions. And that case was teed up as a mortgage foreclosure action. There was no tax foreclosure that had been brought up in that case. Well, what is—what is the county's—I don't see what the county's interest in hammering these poor people is. Your Honor, did the county— Explain to me why you passed the reasonably equivalent value test. I mean, these people had properties worth $20,000 and owed a few hundred dollars in taxes. Your Honor, it's— Plus the fact that you're going to get your tax payments under the Chapter 13 plans. Your Honor, it's under—it's under uniformity of application to all citizens within the municipality. The county— I don't understand what that— Well, the county is obligated. In 1994, New York amended the tax foreclosure statute. It used to be Article 10. Now it's on to Article 11. And when they amended that, municipalities could only opt out of Article 11 if they had an existing mechanism for collecting taxes under their county charter. Ontario County did not. So under the terms of the new Article 11 passed by the New York Legislature in 1994, Ontario County was obligated to follow Article 11. Why is the county—why is the county entitled to get this windfall as opposed to the debtor's other creditors? That's what bankruptcy is—the federal bankruptcy regime is intended to do. Although that is—that is the intent of the federal bankruptcy regime, the BFP court has several concepts that are applicable to—many concepts that are applicable to this case. One of them being where—and the bankruptcy court acknowledged that the collection of taxes by government units is the lifeblood of these government units. They have to fund all kinds of programs under state law. Well, it doesn't require an extension of BFP for the county to be able to collect its taxes. Essentially, you are seeking both the owed taxes and the windfall. And so I don't understand how this is an impediment to the county's tax collection that the idea that you're entitled to the tax that's owed as well as, you know, $20,000 additionally. The impediment is that one of these fraudulent conveyance actions can be filed—a bankruptcy petition can be filed two years after the foreclosure, within two years. That's one statute of limitations. And a fraudulent conveyance action can be filed within two years of the bankruptcy filing. So there's a potential of a—that there could be a claim that's raised about four years after the foreclosure takes place. That's the regime Congress wanted. They passed the bankruptcy statute, and it's four square in the bankruptcy code. Although there is really nothing in the legislative history or in the text of the statute that evidences Congress's intent to displace the important governmental interest in collecting taxes and funding these programs. I mean, bankruptcy filings, by their very nature, disrupt all kinds of state laws. But, Your Honor, there are several state laws, none as important—very few are as important as the government's interest in collecting taxes. But you're not just seeking to collect taxes. You're seeking to hold on to a windfall. No one owns $1,200 in taxes, and you want $22,000 worth of her property, her money. What's the state's interest in that? How do you justify that? Two points. According to BFP, where there's notice, opportunity to cure, and judicial supervision over the process, that the amount that's obtained at the foreclosure constitutes reasonably equivalent value. And in this matter, there's no indication—there's no allegation that the county did not follow the requirements of the statute. In fact, one of these cases was litigated in state court. But the claim is different from BFP. In BFP, there was an auction. And another point, Your Honor, is that— You don't have an auction. You just grab the money. It's a grab-and-go. In other areas of state law, such as divorce decrees, contract disputes, where those have been sought to be set aside under the Fraudulent Conveyance Statute, under the Bankruptcy Code, the courts have dismissed those, stating that, no, these are the provinces of state law. It's up to the states, then, to amend the legislation in order to address any perceived problems with it. States can't amend the Bankruptcy Code. But the states did extend their efforts in order to amend the Tax Foreclosure Statute, Article 11, or changing Article 10 to Article 11 back in 1994. They certainly should have been aware of the ramifications. I'm sure that they weighed the balance between the interest in collecting taxes with rights—the due process rights of taxpayers. And the due process rights of taxpayers, it's not as though we just send one letter. Do you believe that under the regime that you were defending here, these people got reasonably equivalent value for their property? Yes, Your Honor, because there was notice, there was ample opportunity to cure, and there was judicial oversight of the process. That doesn't go to value. That goes to process. That goes to procedure. And, Your Honor, if—and what the BFP Court talked about in the cases that have extended the BFP— So let's talk about the Fifth Circuit case. You've lost me on BFP. Let's talk— I think you were misstating the holding in the case and misstating what the case— Let's talk about T.F. Stone. BFP doesn't apply to your situation. Let's talk about T.F. Stone versus the tax collector, the Oklahoma case out of the Fifth Circuit. And in that case— Do you have any Second Circuit cases? Your Honor, this hasn't been before the Second Circuit. There are lower—there are lower-level cases from the State—from the district courts in the bankruptcy in New York. None have come up to the Second Circuit. There was one case, Harris, that was just tangentially related that was reviewed on a procedural ground, but it did not address this issue head-on. And, Your Honor, just very briefly, I also want to raise the standing issue, because a debtor standing to bring a fraudulent conveyance action is premised on the ability to exempt the property. That's 522H. However, there is a limit to that ability to exempt the property where a property cannot be exempted from the tax rate. Why shouldn't the State be entitled to this—the county be entitled to this windfall? You're putting these near-destitute people in the streets and taking money that could have gone to other creditors. Your Honor, because the county followed the State process to the letter. There's no allegation that the county did not follow the State process. The State legislature, in balancing the interests of local governments and collecting taxes with the due process— Why wasn't this a fraudulent conveyance under federal law, under the bankruptcy code? Your Honor, these cases were brought back starting, I believe, in the 90s, when—it would have been right around the time that BFP was decided. Why wasn't this a fraudulent conveyance? This was not a fraudulent conveyance, Your Honor, because— Why? Because there is notice, ample opportunity to cure, and judicial oversight.  And, Your Honor, also— Factors in fraudulent conveyance is reasonably equivalent value. And I'm missing something, but the fact that the State may have followed procedures says nothing about reasonably equivalent value. Your Honor, in order to address that, we have to look at the other circuits that have extended BFP to tax proclosures. And the focus is on notice, opportunity to cure, and judicial oversight. Suppose the property was worth $250,000 or $5,000 and they owed $1,000 in taxes, but the county had checked all the boxes. Would that still be reasonably equivalent value? Your Honor, under the cases that have extended, that have focused on notice, opportunity to cure, and judicial oversight of the process, no, that would—yes, that would be reasonably equivalent value, and no, it would not be a fraudulent conveyance. That makes absolutely no sense to me. I don't know how you can make that argument with a straight face. It's a silly argument, in my estimation. Then, Your Honor, if I may, if I can go back to the argument about standing. There are cases from North Carolina and also from the Tenth Circuit Bankruptcy Appellate Panel that hold— that apply that standard to IRS tax levies and hold that because the exemption cannot be afforded to a tax lien that is perfected, that a debtor lacks standing in order to challenge a levy, a tax levy. And with that, I see that I've gone well over my time. I've reserved for rebuttal. Thank you, Your Honor. Thank you, Mr. DeParle. Thank you. Thank you very much. We gave you a hard time, but that's our job. Good morning. You can lower the lectern with the help of the clerk, if that's helpful. I think I'll just lower the microphone, if that's okay with you. Thank you so much. Thank you. Go ahead. Good morning. May it please the Court, my name is Carrie Talbot, and I represent the Appellees in these combined cases, Glee and Brian Gonzalez and Brenda and Joseph Hampton. As the Court has just addressed with its questions, both issues, which Ontario County puts before the Court today, represent the county's attempt to immunize itself from the valid bankruptcy rights under Section 548 of the Gonzalez's and the Hamptons and enrich itself at the expense of the Gonzalez's and Hampton's as well as their other creditors. It is asking this Court to ignore a well-established rule confirmed by bankruptcy courts, district courts, and circuit courts of appeals across this country that the rationale of BFP regarding reasonably equivalent value doesn't apply where the state foreclosure procedures are not designed to approximate value. Article 11 does not approximate value. The home is taken under Article 11 with no auction proceedings at all, as Your Honor has referenced in his questions. I also want to turn to the 522c2b argument for a moment. Ontario County is seeking for this Court to refashion the language and purpose of Section 522c2b to operate as a bar on the debtor standing in these 548 cases. This is incorrect. No court anywhere has ever held that 522c2b prohibits a debtor from claiming an exemption in the context of a Section 548 avoidance plan. Ontario County is asking this Court to completely rewrite bankruptcy law in a way that is unsupported by the plain language of the statute and would have far-reaching consequences. The district court correctly held here that 522c2b is not a bar on the Hamptons and the Gonzalez's claiming an exemption in their property. Am I clear that the Chapter 13 plans for both of your clients include provisions for paying these people tax? That's absolutely correct, Your Honor. Is that a priority? It is. These are priority claims which are also being paid at 12% interest. That's correct, Your Honor. So I think this question actually goes to the twin purposes of Section 548 here. This is an avoidance action. An avoidance action has the purpose of equitably distributing assets among the creditors and avoiding a disproportionate loss to the debtors. So my colleague referenced the case Enrique Harris that was before this Court in 2006. This was a case that concerned a 548 transfer. The Court did not reach the merits in Harris, but the Court did warn Indicta against a county taking a windfall. I'm quoting here, In weighing the prejudice of dismissing this appeal, the Court below should be mindful that there is a strong presumption of not allowing a secured creditor to take more than its interest. We would urge this Court to follow the Dicta in Enrique Harris. What are your views on standing? I'm sorry? Your views, please, on standing. Yes, absolutely. So I think that Ontario County is misstating the standing rule. Section 522 of the Bankruptcy Code broadly deals with exemptions. Section 522C specifically deals with the treatment of exempt property. The Ninth Circuit discussed this in Enrique de Mara. They specifically held that Section 522C, the purpose of Section 522C, is to govern the treatment of exempt property. They stated in that case the fact that de Mara may be able to exempt the property that is subject to the tax lien does not mean that he can remove the lien. My clients aren't attempting to remove the lien. They're trying to pay the lien. Ontario County won't let them pay it. So they clearly have standing in this case. Both the lower court and the bankruptcy court determined that they met all of the elements of standing. They've claimed an exemption in their home, and that's all that's needed for standing here. I would just add that the cases that the appellant cites that are addressing the standing issue all concern debtors trying to avoid payment. My clients are not trying to avoid payment. We would suggest that those cases are not relevant here and that the court should affirm the lower court's rulings. I do just want to address Ontario County's argument about uniform applicability for a moment. I'm sorry, about what? About uniform applicability for a moment. Because I think it's a misstatement of what's happening here. In fact, my clients are arguing for uniform applicability. We are not asking for any special treatment. Ontario County is the one asking for special treatment. They're asking for a carve-out from the established rights under the bankruptcy code. Ontario County also made reference to... But let's assume, just hypothetically, that opinion in your favor is correct. What do you think the decretal paragraph should say? I'm sorry, could you repeat the last part of that question? Let's assume, just purely hypothetically, because we don't know what we're going to decide, obviously, until we have conferred. But just assuming hypothetically that the case is decided in your favor, the opinion is written, holding for you, what should the decretal paragraph of the opinion say? Well, we would request that the court hold that BFP is not applicable here, because there's no measure between value, the value of the property, and the value that it's taken for, under Article 11. And that Section 522c2b does not have any effect on the debtor's ability to claim standing. And that we would specifically ask the court to affirm the lower court's rulings and the bankruptcy court's decision that the best outcome here was to transfer the property back to the Hamptons and McDonalds. Would we have to strike down or repair the state statute? No. No, not at all. This issue has been addressed in courts across the country. The Seventh Circuit addressed it in Henry Smith. The Bankruptcy Court of New Jersey has addressed it in GGI. This does not impinge states' rights. And to the extent that it does, that's how the Supremacy Clause works. Bankruptcy courts can impinge on state operation, but it won't. Ontario County is not only getting the taxes, they're getting 12% interest on top of that. I would just like to briefly mention the Fifth Circuit and the Ninth Circuit and the Tenth Circuit decisions. Because Ontario County mentioned them in their brief as though it's supportive of its position, and I respectfully do not think that that's the case. Tia Stone, the Fifth Circuit case, Inri Traktka, the Ninth Circuit case, and Kajima, the Tenth Circuit case. In all of those cases, Ontario County is correct that BFP was held to apply. But the reason for that is because there was competitive bidding. You have to look at the state statutes here. And under Article 11, there is simply no way that the property is exposed to the market. So there's no relationship between the transfer and the value of the property. I would also just briefly like to address Ontario County's concerns about title disruption. These issues have also been considered by other courts, particularly the Seventh Circuit and Inri Smith. But it's also impractical. The realities of the Bankruptcy Code and the Real Property Tax Law are such that these cases are not going to be brought after four years. I think the Hampton case is really illustrative of this. The way that the RPTL works is that once there's a judgment, the county can move forward with an auction. The deadline to redeem in the Hampton case was January. The county got a judgment in March, and an auction was scheduled for May. They filed their bankruptcy and their adversary proceeding at the beginning of May. So the county's concerns about title disruption, about the fact that fraudulent conveyance claims are going to be brought after four years, it's just not realistic. A Chapter 13 debtor who's trying to save their home is going to have to bring their action as quickly as possible. The District Court agreed with this when it found that Ontario County's concerns were unfounded and speculative. So just to wrap up here, I would say that if the county's position is accepted, the Hamptons and the Gonzaleses are going to lose their home, their creditors are going to get nothing, as the Bankruptcy Court determined, and Ontario County is going to walk away with a hefty profit. They're also going to walk away with an irrebuttable presumption that will shield them from any future 548 claim. This outcome is not legal, nor just. The courts below properly held that Ontario County was not entitled to the sweeping immunity that it seeks, either through an extension of BFP or a novel reading of 522c2b. We respectfully request that this court dismiss the county's appeal and uphold the decisions. Thank you. Just a quick question. This seems to be such an important, portentous sort of case. Why hasn't this been resolved before? Why is this somehow being presented to us in this way as a relatively novel question for consideration? I don't know if I can give you a great answer to that. I can tell you that there is plenty of case law within New York regarding the fact that BFP does not apply to Article 11. All of the cases are consistent. I can only venture a guess that perhaps the reason it's never gone up on appeal until now is because the rule is very clear. Great. Thank you. Thank you. Mr. DiPazio, you've reserved one minute. Thank you, Your Honor. Just a couple of brief points. On the Damara case that was cited by my colleague, that was a case that was teed up under Section 545 of the Bankruptcy Code seeking to avoid a tax lien. However, Section 522, which limits the standing of a debtor, makes no distinction between Section 545 actions to avoid a lien, Section 547 actions to avoid a preferential transfer, or Section 548 transfers to avoid a fraudulent conveyance. And another point, too, is that in a mortgage foreclosure, oftentimes what will happen at the auction is that the bank will bid in for the judgment amount. And then the bank will take title to that property. And then the bank will then list that property on the open market and expose it to market forces, perhaps hire a realtor and sell it at a premium. The bank keeps that additional premium. And then finally, to address Your Honor's question about why this hasn't been brought to this circuit before, oftentimes bankruptcy cases are very complicated. Anything can happen in the process. You may have a pending adversary proceeding. But if the underlying bankruptcy gets dismissed for another reason, the adversary proceeding goes away. I can't comment on the decisions made by the counties in the Northern District as to why those weren't brought up. But this is the first one that I'm aware of with the county that I represent that has made it through the trial phase and now the appellate phase. Thank you. Thank you very much. Thank you both. We'll reserve the seat.